Jack D. Edwards, 6-3877
Kaden B. Canfield, 7-6238
EDWARDS LAW OFFICE, P.C.
PO Box 5345
Etna, WY 83118
Ph.: (307) 883-2222
Fax: (307) 883-0555
jack@edwardslawofficepc.com
kaden@edwardslawofficepc.com
*Of Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| RACHEL ROE, a minor, by and through her father and Next Friend, RICHARD ROE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | **COMPLAINT** |
| (1) BOARD OF TRUSTEES OF THE TETON COUNTY SCHOOL DISTRICT NO. 1; (2) GILLIAN CHAPMAN, Superintendent in her individual capacity; (3) SCOTT CRISP, in his individual capacity; and (4) DANIEL ABRAHAM, in his individual capacity, | ) ) ) ) ) ) ) ) ) ) | Case No. **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

Plaintiff, RACHEL ROE, by her father and next friend, RICHARD ROE, and by and

through her counsel, brings this action against Defendants Board of Trustees of the Teton County

School District No. 1 ("TCSD"), Gillian Chapman, Scott Crisp and Daniel Abraham for

Defendants' violations of her rights under Title IX of the Education Amendments of 1972 ("Title

1

IX"), 20 U.S.C. § 1681, *et seq.*, and violations of her rights to equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution and federal rights under Title IX, pursuant to 42 U.S.C. § 1983.

## INTRODUCTION

1.

This is a federal civil rights case brought by Plaintiff, a former TCSD student. Plaintiff, while attending TCSD schools, was sexually assaulted and raped by TCSD students. Following each incident of sexual assault, Plaintiff was subjected to severe student-against-student harassment and retaliation after reporting the sexual assaults to TCSD officials. After learning of Plaintiff's reported sexual assaults and reports of subsequent harassment and retaliation by TCSD students, TCSD officials with authority to stop the harassment and retaliation disregarded her reports and acted with deliberate indifference to the assaults and sexual harassment. Specifically, TCSD failed to conduct a reasonable investigation into the reported assaults and harassment and failed to attempt to remedy the hostile educational environment. TCSD's actions resulted in a denial of Plaintiff's rights to equal access to education at TCSD in violation of TCSD's Title IX obligations.

2.

Additionally, TCSD, by and through CHAPMAN, CRISP, and ABRAHAM implemented and executed policies and customs in regard to, and in response to, Plaintiff's report that she had been sexually assaulted and harassed by TCSD students, that violated Plaintiff's Fourteenth Amendment Constitutional rights.

2

3.

Finally, TCSD, CHAPMAN, CRISP, and ABRAHAM were policy makers and administrators having duties to train, and failed to train, and failed to properly or sufficiently train its administrators, staff, students, and parents about: sex discrimination and sexual harassment against students; Title IX and/or student-against-student sexual misconduct; identifying, investigating, reporting, and remedying the effects of sexual harassment by students against students like Plaintiff; or properly responding to and remediating continued harassment and hostility by students like those who continued to harass Plaintiff after she reported sexual assaults.

4.

Plaintiff seeks recovery to redress the hostile educational environment and civil rights violations she suffered by Defendants actions and inactions, pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), and 42 U.S.C. § 1983.

**PARTIES, JURISDICTION AND VENUE**

5.

Plaintiff RACHEL ROE is a seventeen-year-old female, and a citizen of the United States. She currently resides in Victor, Teton County, Idaho. "Rachel Roe" has been substituted for Plaintiff's legal name in order to protect her privacy as an individual and minor who has been sexually assaulted.

6.

TCSD is a body corporate legally organized in the state of Wyoming.

7.

The Board of Trustees of the Teton County School District No.: 1 is the governing body for the affairs of TCSD, with the power to sue and be sued on behalf of TCSD.

8.

TCSD operates as a public-school district serving students in Jackson, Wyoming and surrounding rural communities. TCSD has fewer than 3,000 students in grades K-12. Jackson Hole High School ("JHHS"), TCSD's flagship high school, has a student population of less than 700 students for grades 9-12. In 2020, U.S. News and World Report ranked JHHS as the best high school in Wyoming, a status JHHS has held for six of the past eight years. During all material times, TCSD received federal funding for its academic programs and activities.

9.

Defendant GILLIAN CHAPMAN ("CHAPMAN"), sued in her individual capacity, was at all relevant times the Superintendent of TCSD. At all relevant times, CHAPMAN was an agent and/or employee of TCSD, acting within the scope of her employment.

10.

Defendant SCOTT CRISP ("CRISP"), sued in his individual capacity, was at all relevant times the Principal of JHHS. At all relevant times, CRISP was an agent and/or employee of TCSD, acting within the scope and course of his employment.

11.

Defendant DANIEL ABRAHAM ("ABRAHAM"), sued in his individual capacity, was at all relevant times the Vice Principal of JHHS. At all relevant times, ABRAHAM was an agent and/or employee of TCSD, acting within the scope and course of his employment.

12.

Defendants TCSD, CHAPMAN, CRISP, and ABRAHAM, were administrators and final policymakers, responsible for articulating, training, and ensuring compliance with federal law, state law, and official and unofficial policies for the protection of TCSD's students at JHHS.

13.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. As the events in question occurred in Teton County, Wyoming, venue is proper in this Court.

**FACTUAL BACKGROUND**

14.

In the 2017-2018 and 2018-2019 school years, TCSD received federal funding, as contemplated by Title IX, 20 U.S.C. § 1681 *et seq.*, for its activities.

15.

TCSD is responsible for all facets of school operations and programs in the district, including the staffing and training of key positions (such as a administrators and Title IX Coordinators) and the provision of security for its students. To that end, it maintains policies and customs regarding discrimination, student harassment, the reporting and prompt investigation of discrimination and sexual harassment complaints, and disciplinary action.

16.

TCSD is responsible for ensuring that its employees are properly trained and supervised to perform their jobs. This includes CHAPMAN's performance of the job of TCSD Superintendent, CRISP's performance of the job of JHHS Principal, ABRAHAM's performance of the job of JHHS Assistant Principal, and Sarah Tenney's performance of the job of JHHS Dean of Students, whose responsibilities include the receiving of verbal and written reports of sexual assault and harassment and the investigation of these reports, as well as the institution of corrective measures on behalf of TCSD, such as disciplining students.

17.

TCSD is responsible for the acts and omissions of its employees (to include CRISP, CHAPMAN, ABRAHAM, and Sarah Tenney) and agents.

18.

TCSD, acting through CRISP, CHAPMAN, ABRAHAM, and Sarah Tenney, is responsible for enforcing its policies and procedures regarding student discipline, to include policies and procedures prohibiting and remedying sexual assault and harassment.

19.

From August 2015 through June 2019, Plaintiff was a student enrolled in TCSD schools.

### *The Initial Sexual Assaults & Harassment & Report*

20.

During Plaintiff's Freshman year in 2017, Plaintiff was invited to watch a movie at S.W.'s home in Jackson, Wyoming on the day following the homecoming dance.

21.

S.W. is a male.  In the fall of 2017, he also was a Freshmen student at JHHS.

22.

During the movie S.W. and Plaintiff kissed.  Plaintiff was fourteen at the time and this was her first kiss.

23.

Suddenly, S.W. began taking off Plaintiff's pants.  Plaintiff told S.W. to stop, but he did not.  Plaintiff became frozen in fear.  S.W. reached inside Plaintiff's underwear and inserted part of his hand into Plaintiff's vagina, and then asked if it was okay.  Plaintiff responded that it was not okay.

24.

S.W. continued to hold Plaintiff down and assault her. Plaintiff plead with S.W., asking him to stop. She tried to push him off. S.W. began forcefully removing Plaintiff's shirt, bra, and underwear and then placed his weight fully on top of Plaintiff. Next, S.W. aggressively sexually assaulted Plaintiff's vagina, causing great pain.

25.

After what seemed like an eternity to Plaintiff, they heard a sound that turned out to be S.W.'s older brother arriving home. S.W. suddenly stopped, got off Plaintiff, and demanded that she quickly put her clothes back on.

26.

Throughout his assault S.W. repeatedly assured Plaintiff that his actions were normal. Plaintiff felt confused, did not understand what was happening, and was scared.

27.

A few weeks later, Plaintiff was attending a JHHS football game held on property controlled or owned by TCSD. After the game ended S.W. confronted Plaintiff and insisted that they speak. Plaintiff froze in fear again and told S.W. that she did not want to do anything. S.W. then took Plaintiff alone over to the area of the TCSD baseball fields.

28.

When S.W. felt they were sufficiently isolated S.W. held Plaintiff and forced his hand down Plaintiff's pants and underwear and began rubbing her vaginal area. Plaintiff struggled to push S.W. away and S.W. only stopped when a car began driving nearby. S.W. again assured Plaintiff his actions were normal and that was just how boys show girls they like them.

29.

The assaults by S.W. left Plaintiff feeling hurt, confused, and empty.  She feared what S.W. did was normal.

30.

Plaintiff discussed S.W.'s actions with a close friend, who told Plaintiff that she had been sexually assaulted by S.W.

31.

Plaintiff was required to attend school each day at JHHS with her assailant, S.W.  Hurtful and embarrassing sexualized rumors began to be spread about Plaintiff.  Upon information and belief, the sexualized rumors were spread by S.W. and his friends.

32.

As a result of being forced to attend school with her assailant, S.W., Plaintiff became socially distant from her close friends and her grades began to decline.

33.

In February of 2018, Plaintiff's parents met with JHHS's school counselor Emily Hoffer to discuss Plaintiff and determine the cause of her sudden scholarly and social decline. It was at this time that Plaintiff first confided to her mother that she had been sexually assaulted by S.W. and that the assault and subsequent sexualized rumors at JHHS were the cause of her sudden change in behavior.  Plaintiff had been afraid to bring the sexual assaults and harassment to the attention of JHHS administration out of fear that the report would fall on deaf ears and would bring retaliation and additional harassment at school.

34.

On May 16, 2018 Plaintiff and her parents met with Sarah Tenney to discuss the sexual assaults by S.W. and the ongoing harassment and sexualized rumors she suffered at JHHS.

35.

Two days later, another meeting was held with Plaintiff, her parents, Sarah Tenney, CRISP, and Emily Hoffer to again discuss the assaults. CRISP was aloof during the meeting. CRISP and Sarah Tenney showed astoundingly little interest or concern that Plaintiff had been sexually assaulted by another JHHS student; with one occurrence happening on school campus.

36.

At the close of the May 16, 2018 meeting, CRISP and Sarah Tenney told Plaintiff's parents that they would help Plaintiff.

37.

The vague promise by CRISP and Sarah Tenney left Plaintiff and her parents wondering what exactly TCSD intended to do or could do to assist Plaintiff. No plan, protocol, or timeline was discussed.

38.

CRISP and Ms. Tenney did not inform Plaintiff's parents that Plaintiff had rights under Title IX.

39.

Plaintiff's parents were not informed by CRISP, Sarah Tenney, or any other TCSD staff that TCSD had an obligation to perform an independent investigation into Plaintiff's alleged sexual assaults and ongoing sexual harassment and take reasonable steps to ensure that Plaintiff had equal access to education at JHHS following the assaults.

40.

Although CRISP and Sarah Tenney had mandatory reporting duties under W.S. § 14-3-201, et seq., upon information and belief, they did not report Plaintiff's sexual assaults to law enforcement.

41.

Plaintiff's fears were realized: her report fell on deaf ears. Other than offering for Plaintiff to meet with JHHS school guidance counselor Emily Hoffer about her failing grades, TCSD did nothing to help Plaintiff deal with the stress of being forced to go to school with her rapist and suffer from the embarrassing and harassing sexualized rumors spread about her by S.W. and his friends.

42.

In the absence of reasonable accommodations, for the remainder of the school year it fell upon Plaintiff to try to avoid S.W. and his friends and their sexualized rumors and harassment in their small high school.

43.

Sexualized and derogatory rumors continued to be spread around JHHS about Plaintiff.

44.

Plaintiff discussed these rumors with Emily Hoffer, her assigned school counselor, but again, no discernable action was taken by TCSD to assist Plaintiff. The ongoing sexualized rumors and harassment caused Plaintiff to suffer great distress and loss of hope.

45.

In mid-July of 2018 Plaintiff attempted suicide but was stopped by members of her family. As a result, she was admitted into an in-patient therapy program.

46.

After her release form the in-patient program, Plaintiff continued to meet with a private

therapist. Her private therapist became concerned that school administration had done so little to

assist Plaintiff. Specifically, school administration had not even reached out to Plaintiff to see if

class scheduling accommodations were necessary. Consequently, Plaintiff's therapist reached

out to the school to request the accommodations.

47.

A week prior to school starting, someone from JHHS reached out to Plaintiff to inquire

whether Plaintiff's proposed school schedule was acceptable.

48.

Upon information and belief, no investigation was performed to determine if any

accommodations were warranted or reasonably necessary to provide Plaintiff with a safe

educational environment at JHHS after reporting being sexually assaulted by a JHHS student and

then subjected to daily sexual harassment and retaliation at JHHS.

### *The 2018 Sexual Assault*

49.

On the evening of September 2, 2018, Plaintiff planned to attend an all-ages concert at

Pinky G's Theatre with a friend. J.P.R., another JHHS student, asked Plaintiff to come to town

early and hang out with him before the concert. Plaintiff was now fifteen years old. J.P.R. was

sixteen.

50.

After meeting up that evening, J.P.R. led Plaintiff to a secluded alcove near the Snow King

Sports & Events Center in Jackson. The two began watching a video on his phone.

51.

During the movie, J.P.R. produced an alcoholic beverage and encouraged Plaintiff to drink it. J.P.R. kept insisting that Plaintiff drink more and more alcohol. Plaintiff became tired, groggy, and dizzy. Plaintiff noticed that it seemed J.P.R. was only pretending to drink alcohol with her.

52.

When Plaintiff was intoxicated and vulnerable, J.P.R. removed Plaintiff's clothing and raped her.

53.

When J.P.R. finished, he sat Plaintiff up and told her she needed to sober up. Plaintiff was unable to determine exactly what was going on at this point. She remembers slipping in and out of consciousness. Plaintiff recalls that at one-point J.P.R. offered her a Gatorade drink and told her to drink it. Plaintiff also recalls that at some time J.P.R. forced his penis into her mouth, and ejaculated into her mouth. Throughout the assault J.P.R. assured Plaintiff that everything he was doing was okay.

54.

When J.P.R. was finished raping Plaintiff, he helped Plaintiff stand up, took her out of the alcove, directed her towards the concert, and abandoned her.

55.

J.P.R. had made Plaintiff so drunk and disoriented that she did not know where she was.

56.

Plaintiff eventually bumped into a friend who to took her to the concert. Plaintiff's

friends at the concert were worried about Plaintiff's condition and encouraged Plaintiff to call her

parents. However, Plaintiff feared her parents would be disappointed that she drank alcohol.

57.

A few days later J.P.R. sent Plaintiff a message on her phone telling her that he had left

money in her pocket for her to get "Plan B" pill. J.P.R. also assured Plaintiff that she had

initiated the sexual contact and that she had thought J.P.R. was her boyfriend. Plaintiff knew this

to be untrue; they were not and had never been in a dating relationship.

58.

In fear, shame, and pain, she initially hid the rape. However, Plaintiff soon discovered

that she was pregnant.

59.

Again, horrible sexualized and derogatory rumors about Plaintiff were spread around

Plaintiff's small high school, leading to Plaintiff's parents' ultimate discovery of the rape and

pregnancy.

60.

Upon learning that Plaintiff was pregnant, Plaintiff's parents directed her to consult with

a physician.

61.

Following consultation with her physician, Plaintiff's pregnancy was terminated.

62.

Terminating the pregnancy was very painful to Plaintiff, both physically and emotionally.

### The Report of the 2018 Assault

63.

Teton County Sheriff's Office Deputy Drew Roundy was assigned as the School Resource Officer at JHHS in the fall of 2018.

64.

On or before September 27, 2018 Deputy Roundy received a report from a student of a sexual assault involving Plaintiff.

65.

On or about the same day, Deputy Roundy reported to ABRAHAM, that JHHS students were under investigation for raping and sexually assaulting Plaintiff.

66.

At this time, ABRAHAM informed Deputy Roundy that J.P.R. had a reputation of getting female students intoxicated and then taking advantage of them sexually.

67.

Deputy Roundy attempted to interview Plaintiff, but at this point Plaintiff's emotional health was poor and she was unable to endure an interview about her the rapes she had endured.

68.

On September 27, 2018, Sarah Tenney sent Plaintiff and her parents an email informing them that Plaintiff was failing two classes.

69.

On that same day Mr. Roe responded to Sarah Tenney's email, writing that he was disappointed with the lack of support for Plaintiff following their Spring 2018 meeting regarding

the sexual assaults Plaintiff endured at the hands of a TCSD student.  Emily Hoffer was copied on this email.

70.

Although JHHS administration in Spring of 2018 promised to do all it could to help plaintiff following the first assaults by S.W., nothing of substance had been done.  Now, after suffering another assault by JHHS student J.P.R, Plaintiff and her parents had lost trust that the school would provide any effective help or assistance.

71.

Even though JHHS administration had lost Plaintiff's trust due to the betrayal she experienced from them after reporting her first sexual assaults, Plaintiff's parents tried again to work with TCSD and JHHS.

72.

For over two weeks, Mr. Roe received no response to his September 27, 2018 email.

73.

On Friday, October 12, 2018, ABRAHAM responded to Mr. Roe's email.

74.

ABRAHAM's reply was again focused on Plaintiff's poor grades.  No mention was made as to what efforts would or could be taken to help make JHHS safe for Plaintiff to attend.

75.

ABRAHAM's reply caused Plaintiff and her parents to suffer additional pain and concern.  Specifically, ABRAHAM's sole focus on Plaintiff's grades caused Plaintiff to feel that ABRAHAM did not understand the gravity of the issues she was facing.  Roe's parents feared ABRAHAM was not trained, qualified, or concerned about making JHHS safe for Roe.

76.

On Tuesday, October 16, 2018, Mr. Roe responded to ABRAHAM's email, copying Emily Hoffer, CRISP and CHAPMAN.

77.

In his response dated October 16, 2018, Mr. Roe expressed his disappointment about JHHS's lack of communication. He also expressed his sadness that the school failed to follow up and support Plaintiff after the first sexual assaults she suffered.

78.

Mr. Roe, in his October 16, 2018 email, also expressed frustration with the fact that no one from the school followed up with Plaintiff about the recent rape by J.P.R. or even inquired into Plaintiff's well-being.

79.

Mr. Roe, in his October 16, 2018 email, also notified ABRAHAM, Emily Hoffer, CRISP and CHAPMAN that Plaintiff was terrified to walk through the doors of the school each morning.

80.

Mr. Roe, in his October 16, 2018 email, also notified ABRAHAM, Emily Hoffer, CRISP and CHAPMAN that Plaintiff was receiving counseling and therapy to cope with the trauma from the sexual assaults.

81.

Mr. Roe, in his October 16, 2018 email, also notified ABRAHAM, Emily Hoffer, CRISP and CHAPMAN that Plaintiff was trying her best to attend school, but had been to the

emergency room twice, had spent time in two crisis facilities, and was, at that time, living in a

local safe house as a result of the emotional trauma from suffering multiple sexual assaults.

82.

Mr. Roe, in his October 16, 2018 email, also notified ABRAHAM, Emily Hoffer, CRISP

and CHAPMAN that Plaintiff cries herself to sleep each night.

83.

Mr. Roe, in his October 16, 2018 email, also notified ABRAHAM, Emily Hoffer, CRISP

and CHAPMAN that Plaintiff seemed confused, lost, thinks that she should work through this

situation on her own, and goes through periods of self-blame and severe mood swings.

84.

Mr. Roe, in his October 16, 2018 email, also notified ABRAHAM, Emily Hoffer, CRISP

and CHAPMAN that Plaintiff had been harassed and confronted by other students at JHHS and

called a liar as a result of reporting her sexual assaults to JHHS administration and law

enforcement.

85.

Mr. Roe, in his October 16, 2018 email, also expressed concern that sexual assaults

appeared to be on the rise in the Jackson Hole community and stated that he wondered if

ABRAHAM, Emily Hoffer, CRISP and CHAPMAN were doing enough to help combat the

student assaults or assist with the outcomes.

86.

Mr. Roe, in his October 16, 2018 email, also notified ABRAHAM, Emily Hoffer, CRISP

and CHAPMAN that the school's lack of concern about the situation caused Plaintiff to feel

helpless.

87.

Mr. Roe, in his October 16, 2018 email, also wrote to ABRAHAM, Emily Hoffer, CRISP and CHAPMAN that "[o]n a satisfaction scale of 1-10 (with 10 being the highest score), I feel the 'support' provided by JHHS for our daughter is currently hovering below zero."

88.

CHAPMAN responded to Mr. Roe's October 16, 2018 email by apologizing for the school's lack of communication.

89.

CHAPMAN, in her email, also apologized that the school's support was not apparent when Plaintiff needed it the most.  CHAPMAN also promised to restore trust in the school and help Plaintiff recover from the trauma she had endured.

90.

Mr. Roe responded the same day that he and his wife were willing to speak with CHAPMAN.

91.

CHAPMAN responded the next evening by asking for a convenient time.

92.

On October 18, 2018, Plaintiff agreed to be interviewed by Detective Larsen of the Teton County Sheriff's Office.

93.

During the interview, Plaintiff reported to Detective Larsen each of the three sexual assault incidents addressed above.  Upon determining that all of the incidents occurred within the

boundaries of the Town of Jackson, the investigation was turned over to Jackson Police Department.

94.

Mr. Roe replied to CHAPMAN's email on October 18, 2018. He conveyed that their family was overwhelmed and exhausted with recent investigations with the Wyoming Division of Family Services, forensic interviews with law enforcement. He shared that his family was under extreme stress and that Plaintiff needed a little break before meeting.

95.

CHAPMAN never followed up on Mr. Roe's October 18, 2018 email.

96.

On November 7, 2018, ABRAHAM sent an email to Mr. and Mrs. Roe, inquiring whether Piper Worthington could develop a relationship with Plaintiff. Abraham's email indicated that Ms. Worthington could help support Plaintiff and assist with her academic performance.

97.

Mr. Roe responded by email to ABRAHAM the same day, stating that he was confused that a similar proposal was not made in the Spring when Mr. and Mrs. Roe and Plaintiff met with JHHS staff or even earlier in the current school year when Plaintiff met with Sarah Tenney.

98.

Mr. Roe's email response also indicated that he would discuss the addition of Piper Worthington into Plaintiff's support group with Plaintiff's current therapists.

99.

On November 7, 2018, ABRAHAM replied to Mr. Roe's response, and explained that

Sarah Tenney had "acted as the point person for [Rachel]" from Spring 2018 to Fall until Sarah

Tenney left for maternity leave. ABRAHAM further explained that he was proposing that Piper

Worthington be transitioned to support Plaintiff going forward.

100.

On November 8, 2018, Mr. Roe responded to ABRAHAM, copying Mrs. Roe, CRISP,

CHAPMAN, and Emily Hoffer. The response stated that the Roe family was very upset with the

lack of support Plaintiff received from Sarah Tenney.

101.

Mr. Roe further explained to ABRAHAM via email that because there had been no

support from Sarah Tenney, the proposed "transition" to Piper Worthington should not be

difficult. Mr. Roe indicated that Mr. and Mrs. Roe were willing to meet with Piper Worthington

and hear her thoughts on what could be done to assist Plaintiff. However, due to Plaintiff's prior

experience with JHHS, Plaintiff did not believe JHHS administration would do anything

meaningful to assist her and she was unsure about meeting with Piper Worthington.

### *The Hostile Educational Environment Continues*

102.

Plaintiff, S.W. and J.P.R. shared the hallways, classes, and extracurricular activities at

JHHS. They also had many friends and acquaintances in common. Due to the small size and

small student population of JHHS, Plaintiff was unable to avoid S.W. and J.P.R., and their

friends, in classes, in common areas, and at school activities.

103.

Before the assaults, both S.W. and J.P.R. befriended Plaintiff and she trusted them.

104.

Following the rape, simply being forced to be around S.W., J.P.R., and their supporters in school at JHHS caused Plaintiff to suffer panic attacks and to face daily reminders of fear, pain, shame, secrecy, and anger.

105.

Additionally, S.W., J.P.R., and their friends subjected Plaintiff to regular harassment and mockery, calling her a "whore" and a "slut" and a "liar" in the school hallways, in large part because she told the authorities that S.W. and J.P.R. raped her.

106.

As the school year went on, and the harassment continued, Plaintiff's depression and panic attacks worsened in frequency and severity. She suffered frequent and ongoing suicidal ideations. Simply crossing the threshold of JHHS caused Plaintiff to become so physically ill that many days she could not remain on campus.

107.

As a result of the emotional stress from being raped and being forced to be around her rapists and their friends, and subjected to daily sexual harassment in school, Plaintiff missed many days of school and fell further behind in her schoolwork.

108.

Following the sexual assaults and subsequent harassment, Plaintiff's grades went from mostly A's and B's to mostly D's and F's.

21

109.

During her 8th Grade year Plaintiff had made school record times in Track events. She enjoyed Track immensely and excelled at. Due to the emotional effects of the first assaults and subsequent related rumors and harassment, Plaintiff was unable, emotionally, to participate in Track during the Spring 2018 season. When the Spring 2019 Track season arrived, Plaintiff was determined to re-join the team as an outlet for all that she had been through.

110.

Unfortunately, Plaintiff learned that her assailant, J.P.R., was joining the JHHS Track team because he was cut from the soccer team. Plaintiff protested to the JHHS Track team manager but was told that JHHS could do nothing to help her. Although TCSD was on notice that Plaintiff continued to struggle at school with J.P.R. and S.W., again, TCSD did nothing to help her.

111.

Because Plaintiff could not tollerate the fear and panic attacks associated with being around her rapist at practices and meets, and riding with him on buses, etc., she was forced once again to abandon JHHS Track and her athletic aspirations at JHHS.

### *Defendants' Inadequate Response*

112.

At no point was Plaintiff informed by anyone at TCSD that Plaintiff had rights as a victim under Title IX, or that the school was required to perform a Title IX investigation, or that the school could take action against S.W., J.P.R., and their friends, or that the school could do anything to protect Plaintiff from future harassment. In fact, the adults tasked with supporting her at TCSD made Plaintiff believe her experience was just part of life that she needed to learn to deal with.

113.

Plaintiff was not informed that she could or should report the assaults to the TCSD Title IX coordinator; in fact, she was not made aware that such a position even existed.

114.

Plaintiff initially trusted Defendants when they told her they would take appropriate actions to protect Plaintiff and other JHHS students in response to learning that Plaintiff had been raped and sexually harassed by her peers.

115.

Plaintiff's initial trust waned when JHHS administration did nothing to help her and ignored her reports of ongoing harassment and retaliation.  Plaintiff felt hurt and betrayed by JHHS's actions and inactions.

116.

According to the policies contained in the 2018-2019 JHHS Student Handbook, all JHHS staff have authority to address minor disciplinary infractions.  Additionally, all JHHS staff are required to immediately notify a school administrator of any act of violence they have knowledge of, have witnessed or received. All reports are to be promptly investigated. The Student Handbook also provides that all reports of alleged harassment will be thoroughly investigated by JHHS administration.

117.

Also, according to the policies contained in the 2018-2019 JHHS Student Handbook, the Dean of Students and other administrators such as the Principal and Vice Principal have authority to address major disciplinary infractions such as harassment, as well as repeated minor disciplinary infractions.

118.

The rights of victims of sexual harassment or assault were not mentioned in the 2018-2019 JHHS Student Handbook.

119.

Students' rights under Title IX were not referenced in the 2018-2019 JHHS Student Handbook.

120.

The name and/or contact information for TCSD's Title IX Coordinator or JHHS's Title IX Coordinator was not provided in the 2018-2019 JHHS Student Handbook.

121.

Although Plaintiff's parents met with Sarah Tenney and CRISP on May 18, 2018 to discuss the first assault and rape, JHHS administration and TCSD failed to investigate or even appoint a Title IX investigator to investigate the impact of the assaults and ongoing harassment on Plaintiff's education at JHHS.

122.

CRISP never followed up after the May 18, 2018 meeting.

123.

Plaintiff and her parents were never informed who TCSD's Title IX coordinator was or who was appointed as the investigator. They were not informed about the status of the investigation or the conclusions reached if any investigation was performed. They were not provided a copy TCSD's investigative report or informed about what actions were going to be taken to remediate the effects of the ongoing sexual harassment Plaintiff endured at JHHS.

124.

Emily Hoffer was untrained and inexperienced in handling Title IX matters, but she made some attempt to assist Plaintiff with her failing grades.

125.

Any assistance provided by Emily Hoffer was patently inadequate under Title IX given the lack of priority, support and training offered to her by Defendants.

126.

Plaintiff and her parents were left deflated and shocked by the Defendants' lack of reasonable response or concern that their own students had sexually assaulted another JHHS student and that the impact and aftermath of the assaults created an unsafe educational environment at JHHS.

127.

TCSD actions, if any, were unreasonable and ineffective to eliminate the hostile environment Plaintiff had been subjected to since Fall of 2017, which worsened after the September 2018 rape.

128.

TCSD thereafter failed to act in response to learning that Plaintiff was exposed to ongoing harassment and retaliation after speaking up about the assaults

129.

The Defendants were made aware that Plaintiff still did not feel safe to return to school, yet Defendants failed to take reasonable steps to remediate the hostile environment or even follow up to assist Plaintiff.

130.

TCSD escalated the hostile educational environment Plaintiff suffered when it failed to comply with its own policies in handling Plaintiff's reports of sexual harassment and retaliatory harassment.

131.

TCSD escalated the hostile educational environment Plaintiff suffered when it failed to appoint an independent investigator to promptly investigate Plaintiff's report of having been raped and sexually harassed by TCSD students.

132.

TCSD escalated the hostile educational environment Plaintiff suffered when it failed perform an investigation into Plaintiff's report of having been raped and sexually harassed by TCSD students.

133.

To the extent any TCSD staff actions could be deemed to be a Title IX investigation into Plaintiff's report of being sexually assaulted by a peer, TCSD escalated the hostile educational environment when the investigation was superficial and cursory and any conclusions unfounded.

134.

TCSD escalated the hostile educational environment Plaintiff suffered when it failed to provide Plaintiff adequate emotional and psychological support after it learned Plaintiff had been raped and then subjected to ongoing retaliatory sexual harassment by her peer TCSD students.

135.

TCSD escalated the hostile educational environment Plaintiff suffered when it allowed S.W., J.P.R. and their friends, unchecked and encouraged by no accountability, to harass and retaliate against Plaintiff for reporting the assaults.

136.

TCSD escalated the hostile educational environment Plaintiff suffered it failed to inform S.W., J.P.R. and their friends that they were was accused and under investigation for sexual assault and ongoing retaliatory harassment that violated TCSD's policy and Plaintiff's Constitutional rights under Title IX.

137.

TCSD escalated the hostile educational environment Plaintiff suffered when it refused to make reasonable accommodations or even investigate to determine if accommodations were warranted to allow her participate in JHHS athletic opportunities without being subjected close and intimate contact with J.P.R. and the fear and anxiety attacks that came from being around him.

138.

TCSD escalated the hostile educational environment Plaintiff suffered when its staff betrayed Plaintiff's trust after she reported the assaults and believed that Defendants would act to help and protect her.

139.

To the extent that any TCSD efforts could be deemed to have been a Title IX investigation, TCSD escalated the hostile education environment Plaintiff suffered when it failed to document any investigation that took place and failed to keep Plaintiff or her parents apprised of its investigation or outcomes.

140.

As a result of TCSD's clearly unreasonable response to Plaintiff's report of being sexually assaulted and sexually harassed and retaliated against by students at JHHS, JHHS was not safe for Plaintiff and she was deprived of equal access to the educational opportunities at JHHS.

141.

TCSD's actions and inaction described herein discouraged its students who are victims of sexual harassment and assault by their peers, including Plaintiff, from speaking out against and reporting their assailants.

142.

As a direct result of the Defendants' conduct described herein, Defendants created and/or subjected Plaintiff to a hostile educational environment that deprived her of access to educational opportunities at JHHS.

143.

Because of TCSD's actions and inactions, Plaintiff did not feel safe to return to JHHS.

144.

Plaintiff shared her fears with TCSD administrators, yet unreasonably ineffective action was taken to remedy the situation, in turn making Plaintiff liable and vulnerable to additional harassment and retaliation at JHHS.

145.

Prior to reporting J.P.R.'s sexual assault to JHHS administration, Plaintiff was assured by other student victims that they too were also going to speak up in unison about their assaults and harassments by J.P.R. and other male students at JHHS.

146.

Unfortunately, after seeing how poorly TCSD responded to Plaintiff's report, and as a result of their poor response, observing that Plaintiff was retaliated against and harassed by JHHS students, the other victims feared being treated similarly and they chose to remain silent about their assaults.

147.

Upon information and belief, many more victims have chosen to remain silent due to TCSD's history of poor response to allegations and reports of sexual harassment and sexual assault.

148.

Due to Defendants' deliberate indifference to Plaintiff's reported sexual assaults and the ongoing retaliatory harassment at JHHS, JHHS was not safe for Plaintiff. Plaintiff was forced to move and relocate to another state to obtain access to education and educational opportunities in a safe environment.

149.

TCSD's Title IX program, if it existed beyond a written policy, did not assist Plaintiff.

150.

Instead, when Plaintiff reported to TCSD administrators that she had been raped by TCSD students and pled for help, the very administrators that were charged with protecting Plaintiff ignored and betrayed her, telling her that "boys will be boys."

151.

Along with telling Plaintiff that "boys will be boys," TCSD administrators suggested that Plaintiff's experience was not unique or as bad as she thought because she was not the only victim dealing with sexual assault and harassment at JHHS.

152.

Additionally, as a direct result of the Defendants' conduct described herein, Plaintiff has

suffered and will continue to suffer great pain of mind and body, severe and permanent emotional

distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem,

humiliation, and psychological injuries.  Plaintiff was prevented and will continue to be prevented

from performing her normal daily activities and obtaining the full enjoyment of life; and has

incurred and will continue to incur expenses for medical and psychological treatment, therapy, and

counseling.

### *Defendants Failed to Provide Essential Title IX and Sexual Harassment Training to Administrators, Staff, Students, and Students' Parents*

153.

A rape culture is prevalent in American high schools.  A rape culture is an environment in

which rape is prevalent and in which sexual violence against women is normalized and excused.

Examples of rape culture include victim blaming, trivializing sexual assaults, tolerance of sexual

harassment, and refusing to take rape accusations seriously, among others.

154.

In 1998, the U.S. Supreme Court stated, "[t]he number of reported cases involving sexual

harassment of students in schools confirms that harassment unfortunately is an all too common

aspect of the educational experience." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292

(1998).

155.

In 1999, the U.S. Supreme Court determined that schools may be held liable in private

Title IX actions for monetary damages when they are deliberately indifferent to student-against-

student sexual misconduct and harassment. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999).

156.

In January 2001, the U.S. Department of Education Office for Civil Rights ("OCR") issued *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties* ("2001 OCR Guidance"), informing all U.S. schools receiving federal financial assistance, including TCSD, that "[p]reventing and remedying sexual harassment in schools is essential to ensuring a safe environment in which students can learn." OCR reminded schools that student-against-student sexual misconduct constitutes prohibited sexual harassment. OCR also stated:

> "[S]chools need to ensure that employees are **trained** so that those with authority to address harassment know how to respond appropriately, and other responsible employees know that they are obligated to report harassment to appropriate school officials. **Training for employees should include practical information about how to identify harassment and, as applicable, the person to whom it should be reported**."

157.

The 2001 OCR Guidance stated, with respect to student-against-student sexual harassment:

> "If a student sexually harasses another student and the harassing conduct is sufficiently serious to deny or limit the student's ability to participate in or benefit from the program, and if the school knows . . . about the harassment, the school is responsible for taking immediate effective action to eliminate the hostile environment and prevent its recurrence. . . . [I]f, upon notice, the school fails to take prompt, effective action, the school's own inaction has permitted the student to be subjected to a hostile environment that denies or limits the student's ability to participate in or benefit from the school's program on the basis of sex."

158.

In January 2006, OCR issued *Dear Colleague Letter – Sexual Harassment Issues*, to U.S. public schools, including TCSD, stating, **"[u]nfortunately, a significant number of students**

**are still subjected to sexual harassment, which can interfere with a student's education as well as his or her emotional and physical well-being."** OCR reminded public schools of their obligation "to take immediate and effective steps to end sexual harassment when it occurs, prevent its recurrence, and remedy its effects."

159.

On April 4, 2011, OCR sent *Dear Colleague Letter: Sexual Violence* ("2011 OCR Guidance"), to all U.S. public schools, including TCSD, that issued a **"call to action"** to the nation's schools because of "deeply troubling" data regarding school-place sexual violence. OCR informed schools, **"[d]uring the 2007-2008 school year, there were 800 reported incidents of rape and attempted rape and 3,800 reported incidents of other sexual batteries at public high schools."** The Guidance stated, "[a] number of different acts fall into the category of sexual violence, including rape, sexual assault, sexual battery, and sexual coercion. All such acts of sexual violence are forms of sexual harassment covered under Title IX."

160.

The 2011 OCR Guidance reminded schools they have an obligation to investigate reports of sexual harassment, must designate at least one employee to coordinate and comply with Title IX responsibilities, and recommended schools provide **training and education** to employees and students on sexual harassment and violence.[1]

---

[1] The U.S. Department of Education withdrew this Dear Colleague Letter on September 22, 2017. However, the statistics cited above have not changed, and the requirements set forth above have not been formally revised or otherwise superseded by the U.S. Department of Education.

161.

On April 24, 2013, OCR sent *Dear Colleague Letter: Retaliation*, to all U.S. public schools, including TCSD, reminding them they may not retaliate against students or parents who complain to a school about a civil rights violation like sexual discrimination.

162.

On April 24, 2015, OCR sent *Dear Colleague Letter: Title IX Coordinators*, and issued a *Title IX Resource Guide*, to all U.S. public schools, including TCSD. OCR reminded schools of their obligation to designate at least one employee as a Title IX Coordinator who is responsible for coordinating the school's efforts to comply with and carry out the school's Title IX responsibilities, pursuant to 34 C.F.R. §106.8(a). OCR stated, "In our enforcement work, OCR has found that some of the most egregious and harmful Title IX violations occur when a recipient fails to designate a Title IX coordinator or when a Title IX coordinator has not been sufficiently trained or given the appropriate level of authority to oversee the recipient's compliance with Title IX."

163.

The *Dear Colleague Letter: Title IX Coordinators* reminded all public schools, including TCSD, of their obligation to make the role of its Title IX coordinator visible to the school community, including having the recipient's website reflect the complete and current information about the Title IX coordinator.

164.

A 2012 study entitled *Adolescent Dating Violence: A National Assessment of School Counselors' Perceptions and Practices* published in the journal *Pediatrics*, found that while teen dating violence is a significant public health problem and victims of teen dating violence were more likely to experience a myriad of adverse health outcomes in adulthood, schools

33

overwhelmingly fail to provide adequate training for responding to teen dating violence and do not find teen dating violence a high-priority issue.

165.

According to a 2015 published study entitled *Teen Dating Violence (Physical and Sexual) Among US High School Students* authored by researchers of the Division of Violence Prevention at the Centers for Disease Control and Prevention, more than 1 in 5 high school women and 1 in 10 high school men in the U.S. had experienced some form of teen dating violence in the past year.

166.

Advocacy groups such as *Break the Cycle* report that the effects of teen dating violence include victims earning significantly lower grades in school, victims suffering higher rates of sexually transmitted disease, higher rates of poor mental health, increased suicidal thoughts and attempted suicide.

167.

In June of 2019, a female student member of JHHS's very own Speech and Debate Team addressed the topic of high school rape culture while participating in the National Speech and Debate Association's National Tournament.

168.

TCSD officials were on notice that sexual harassment was a specific and recent problem with its own JHHS students.

169.

Specific notice was given to TCSD when, in 2018, the local newspaper the Buckrail published an article entitled *Check Yes or No Consent*, written by former JHHS student Sarah Ross. A copy of this article is attached as Exhibit A.

34

170.

In the article *Check Yes or No Consent*, Ms. Ross describes an ongoing rape culture that is prevalent at JHHS. She also offers ideas as to possible causes and solutions. The article states that Ms. Ross interviewed former JHHS students who attended from 2005 to 2018, as well as local community health professionals. The students relayed their personal experiences with student-against-student sexual assault and harassment at JHHS. Ms. Ross concluded that traumatic sexual experiences are extremely common with JHHS students. Specifically, both young men and young women at JHHS experienced violations, though women were much more likely to describe them as traumatic. The issue at JHHS is systemic, and the culture, predatory. Consent is not a value. Coercion is the baseline. These victims felt voiceless, powerless, and trapped in the tight-knit small-town high school. Multiple victims stated they did not understand consent or that they had been sexually assaulted until after leaving JHHS and learning that the JHHS student behavior is not normal. Ms. Ross concluded that "If adults do not acknowledge the darker side of Jackson's culture, that makes it difficult for young people to talk about it."

171.

On information and belief, TCSD, CHAPMAN, CRISP, ABRAHAM, and Sarah Tenney, as well as other TCSD and JHHS staff and administrators, as well as member of the TCSD Board, were aware of the *Check Yes or No Consent* article and were familiar with the reported incidents described in the article.

172.

Nevertheless, if the Defendants were ignorant of the rampant culture of sexual assault and harassment at JHHS described in the *Check Yes or No Consent* article, their ignorance was a result of clear negligence of their duties to protect TCSD students, including Plaintiff.

173.

Upon information and belief, despite clear notice by the U.S. Supreme Court and OCR regarding Defendant TCSD's obligations to prevent and remediate the effects of sexual harassment, at all times relevant hereto TCSD, CHAPMAN, CRISP, ABRAHAM, and Sarah Tenney failed to provide training or education to administrators, staff, students, and parents regarding Title IX, student-against-student sexual harassment, or retaliation against students who report sexual harassment.

174.

Upon information and belief, at all times relevant hereto, TCSD, CHAPMAN, CRISP, ABRAHAM, and Sarah Tenney failed to provide training or education to administrators, staff, students, and parents on protecting students from sexual harassment and violence, interviewing victims and potential witnesses of sexual harassment, investigating reports of sexual harassment, remediating sexual harassment and violence, proper reporting of suspected sexual harassment or violence to TCSD employees, and prohibition on retaliating against students who report sexual harassment.

175.

Defendants' lack of training is evidenced, *inter alia,* by: its employees and administrators failing to comply with TCSD's own written policies regarding the investigation and handling of student-against-student sexual harassment; its employees and administrators lack of knowledge about Title IX or who handles Title IX for TCSD; TCSD administrators apathetic response to Plaintiff for reporting that she had been raped and harassed by JHHS students – indicating that "boys will be boys"; ignoring standards regarding how rape victims may delay reporting for long periods of time or never report at all; failing to inform Plaintiff or her family about her Title IX

rights and act appropriately regarding such rights; and failing to have or provide adequate, or any, information on students' Title IX rights.

176.

Upon information and belief, at the time Plaintiff reported to TCSD and JHHS that she had been raped by TCSD students, TCSD had not designated a trained or qualified employee to coordinate its efforts to comply with and carry out its responsibilities under Title IX for the protection of its students' rights, including Plaintiff, as required by Title IX.

177.

TCSD appointed Charlotte Reynolds as its Title IX Coordinator in December 2019, well after Plaintiff was forced to leave JHHS and TCSD and relocate to another state just so that she could have access to safe education environment.

178.

During the 2017-2018, 2018-2019 and 2019-2020 school years, TCSD, CHAPMAN, CRISP, and ABRAHAM failed to adequately provide and make available to its students, including Plaintiff, the name and contact information for its Title IX Coordinator in the event a student, such as Plaintiff, had been sexually assaulted or harassed by another student or was otherwise subjected to a hostile educational environment at JHHS and needed assistance.

179.

At all times relevant hereto, Defendant TCSD, CHAPMAN, CRISP, and ABRAHAM officially adopted sexual harassment policies, practices, and customs that were inequitable and inadequate with respect to investigating and properly responding to reports of student-against-student sexual harassment, and, in any event, based upon information and belief, Defendants failed to provide training or education on those policies to administrators, staff, students, and parents.

180.

Due to Defendants' failure to adequately train their administrators, staff, students, and parents to know how to report and handle reports of sexual harassment, perform investigations, and take reasonable remedial action to protect its students' Constitutional rights under Title IX and other federal and state laws, including Plaintiff, the hostile educational environment Plaintiff suffered after reporting the assaults was escalated.

181.

Because of TCSD's failure to train as described herein, JHHS was not safe for Plaintiff and she was denied equal access to educational opportunities.

182.

Additionally, as a direct result of the Defendants' conduct described herein, Plaintiff has suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, and psychological injuries. Plaintiff was prevented and will continue to be prevented from performing her normal daily activities and obtaining the full enjoyment of life; and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling. These issues not only greatly impact Plaintiff, but have also caused great stress, pain, and suffering in every member of Plaintiff's immediate family.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

#### POST-REPORT DELIBERATE INDIFFERENCE
#### IN VIOLATION OF TITLE IX, 20 U.S.C. § 1681, *ET SEQ.*

183.

All paragraphs of this Complaint are incorporated herein by reference.

184.

TCSD, created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX, because:

a.   Plaintiff was a member of a protected class and suffered harassment so severe as to deprive her of access to educational opportunities;

b.   TCSD had actual knowledge;

c.   TCSD was deliberately indifferent to the harassment.

185.

Plaintiff is a member of a federally protected class, namely a female.

186.

The 2017 student-against-student sexual assault on Plaintiff by S.W., by itself, was sufficiently severe to create a hostile educational environment at JHHS.

187.

The ongoing sexual harassment and retaliation by S.W., his friends at JHHS, and other students, related to S.W.'s assaults of Plaintiff, and her reports of the same to JHHS administrators, were sufficiently severe to create a hostile educational environment at JHHS.

188.

The 2018 student-against-student sexual assaults by J.P.R. on Plaintiff, by itself, was sufficiently severe to create a hostile educational environment at JHHS.

39

189.

The ongoing sexual harassment and retaliation by J.P.R., his friends at JHHS, and other students, related to J.P.R.'s sexual assault on Plaintiff, and her reports of the same to JHHS administrators, were sufficiently severe to create a hostile educational environment at JHHS.

190.

CHAPMAN, CRISP, ABRAHAM, Sarah Tenney, and Emily Hoffer are each appropriate persons or officials of TCSD who, at a minimum, have authority to address alleged student discrimination and institute corrective measures on TCSD's behalf.

191.

TCSD, obtained actual knowledge when each CHAPMAN, CRISP, ABRAHAM, Sarah Tenney, and Emily Hoffer, learned that Plaintiff reported having been sexually assaulted by S.W. and J.P.R.

192.

TCSD, had actual knowledge when each CHAPMAN, CRISP, ABRAHAM, Sarah Tenney, and Emily Hoffer learned that Plaintiff was suffering ongoing sexual harassment and retaliation by S.W., J.P.R., their friends, and other students as a result of the student-on-student assaults suffered by Plaintiff and her report of the rape to JHHS administration.

193.

TCSD, acting through CHAPMAN, CRISP, ABRAHAM, Sarah Tenney, and Emily Hoffer, was deliberately indifferent to acts of student-against-student harassment when it failed to investigate Plaintiff's reported sexual assault and ongoing reports of sexual harassment and retaliation tied to her reports of the sexual harassment.

194.

TCSD was deliberately indifferent to acts of student-against-student sexual harassment when it failed to document any Title IX investigation or equivalent and failed to keep Plaintiff apprised of its investigation.

195.

TCSD was deliberately indifferent to acts of student-against-student sexual harassment when it failed to take immediate effective remedial steps to resolve Plaintiff's report that she was sexually assaulted by TCSD students.

196.

TCSD was deliberately indifferent to acts of student-against-student sexual harassment when it failed to appropriately discipline Plaintiff's student attackers and their friends and other students who they exercised control over, and otherwise failed to take steps to prevent future student sexual harassment on Plaintiff.

197.

TCSD was deliberately indifferent to acts of student-against-student sexual harassment when it led Plaintiff to believe, through CHAPMAN, CRISP, ABRAHAM, and Sarah Tenney, that it cared about Plaintiff and was doing all it could to help her, when, it did nothing.

198.

TCSD was deliberately indifferent to acts of student-against-student sexual harassment when its inaction foreseeably caused Plaintiff's attackers to become emboldened and increase their harassment and retaliation against her.

199.

TCSD was deliberately indifferent to acts of student-against-student sexual harassment when it failed to staff an adequately trained Title IX Coordinator, or equivalent, and in doing so jeopardized its students' safety and Constitutional rights, to include Plaintiff.

200.

TCSD was deliberately indifferent to acts of student-against-student sexual harassment when it failed to adequately train its staff and administrators on how to handle and respond to reports of student-on-student sexual assault and harassment or provide training on Title IX procedures.

201.

TCSD was deliberately indifferent to acts of student-against-student sexual harassment when TCSD persisted in its clearly unreasonable action and inaction in response to the ongoing student sexual harassment and retaliation Plaintiff was suffering when it had actual knowledge that Plaintiff was suffering as a result of the hostile educational environment.

202.

TCSD was deliberately indifferent to acts of student-against-student sexual harassment when it punished Plaintiff by refusing to take reasonable actions to create a safe environment where she could participate in athletics at JHHS without having to be around her rapist daily in athletic training, on busses to athletic events, etc.

203.

TCSD was deliberately indifferent to acts of student-against-student sexual harassment when it engaged in a policy, pattern and practice of behavior designed to discourage and dissuade students who have been sexually assaulted from reporting, seeking prosecution and protection, and

from pursuing completion of their degrees and involvement in on-campus activity after being sexually assaulted, including Plaintiff.

204.

TCSD was deliberately indifferent to acts of student-against-student sexual harassment when it applied its policies, practices and customs in a manner that disparately treated and impacted its female students, including Plaintiff.

205.

TCSD's conduct described above in response to the allegations of multiple student rapes and ongoing sexual harassment and retaliation of Plaintiff described herein was clearly unreasonable in light of the known circumstances.

206.

TCSD's conduct in response to learning that Plaintiff had been raped and suffered ongoing harassment and retaliation was clearly unreasonable in light of TCSD's obligations under existing Title IX legal precedent and regulations.

207.

TCSD's conduct resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied benefits of, and being subjected to discrimination in TCSD's education programs in violation of Title IX.

208.

TCSD's failure to protect Plaintiff as described above was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities and/or benefits provided by TCSD.

209.

Additionally, TCSD, acting through CHAPMAN, CRISP, ABRAHAM, Sarah Tenney, and Emily Hoffer had actual knowledge of the harm and suffering it caused Plaintiff by its institutional betrayal, including failure to investigate and adequately respond to Plaintiff's reports of student sexual harassment and retaliation, yet they still failed to take appropriate remedial action or steps to ensure that Plaintiff felt safe at JHHS.

210.

As a direct and proximate result of the TCSD's conduct described herein, TCSD created and/or subjected Plaintiff to a hostile educational environment that deprived her of access to educational opportunities at JHHS.

211.

As a direct and proximate result of TCSD's deliberate indifference to Plaintiff's rights to access to educational opportunities under Title IX, Plaintiff has suffered sexual harassment and retaliation and was made liable and vulnerable to ongoing student harassment and administrator harassment at JHHS.

212.

As a direct and proximate result of Defendant's deliberate indifference to Plaintiff's reports of sexual assault and ongoing harassment and retaliation, Plaintiff sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a.   Past, present, and future physical and psychological pain, suffering and impairment;

    b.   Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c.       A marred educational and disciplinary record, and impaired educational capacity and future earning capacity;

d.       Attorneys' fees and costs, pursuant to 42 U.S.C. § 1988; and

e.       Such other and further relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION

### RETALIATION IN VIOLATION OF TITLE IX, 20 U.S.C. § 1681, *ET SEQ.*

213.

All paragraphs of this Complaint are incorporated herein by reference.

214.

Reporting sexual assault and harassment to school officials is a statutorily protected activity under Title IX. Reporting incidents of sex discrimination is integral to Title IX enforcement.

215.

Because Plaintiff reported her assailants' sexual harassment and assault to TCSD, Plaintiff was subjected to ongoing retaliatory harassment by S.W., J.P.R., their friends, and other students at JHHS.

216.

S.W., J.P.R., their friends at JHHS, and other students at JHHS are all under the control or supervision of TCSD.

217.

TCSD, upon learning of this retaliatory harassment, had an obligation to stop the harassment and mitigate its effects at JHHS.

45

218.

TCSD failed to stop the retaliatory harassment and mitigate its effects at JHHS.

219.

TCSD's inaction and unreasonable action was materially averse to Plaintiff in that it negatively impacted her educational record, deprived her of educational opportunities and benefits, and subjected her to a hostile education environment.

220.

As a direct and proximate result of Defendant's retaliation, Plaintiff sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a.    Past, present, and future physical and psychological pain, suffering and impairment;

    b.    Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c.    A marred educational and disciplinary record, and impaired educational capacity and future earning capacity;

    d.    Attorneys' fees and costs, pursuant to 42 U.S.C. § 1988; and

    e.    Such other and further relief as this Court deems just and proper.

## THIRD CAUSE OF ACTION

### DISPARATE TREATMENT & IMPACT, IN VIOLATION OF PLAINTIFF'S CONSTITUTIONAL AND FEDERAL RIGHTS, PURSUANT TO 42 U.S.C. § 1983

221.

All paragraphs of this Complaint are incorporated herein by reference.

222.

Sexual harassment is a form of unlawful sex discrimination that can violate the Equal Protection Clause of the 14th Amendment to the U.S. Constitution.

223.

Plaintiff's Equal Protection rights were violated when she suffered sexual harassment and discrimination at JHHS.

224.

Plaintiff also had federal civil rights secured by federal statute, Title IX of the Education Amendments of 1972, which provides in pertinent part:

> [N]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

225.

Title IX was intended to benefit students like Plaintiff.

226.

Title IX provides students like Plaintiff clear civil rights, which are not amorphous or vague, to be free from known sex discrimination at school.

227.

Title IX imposes a binding mandatory obligation on federal funding recipients like TCSD, prohibiting it from discriminating against students on the basis of sex.

47

228.

The U.S. Supreme Court, in *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255-58 (2009), stated, "we conclude that Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools," and held a plaintiff may bring causes of action under *both* Title IX *and* § 1983 for unlawful sex discrimination. Accordingly, a remedy for sex discrimination in schools is not foreclosed under §1983.

229.

Title 42 U.S.C. § 1983 provides that

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

230.

At all times relevant hereto, Defendants TCSD, CHAPMAN, CRISP, and ABRAHAM were policy makers and administrators having duties to create and implement policies, and failed to properly or sufficiently train its administrators, staff, students, and parents about: sex discrimination and sexual harassment against students; Title IX and/or student-against-student sexual misconduct; identifying, investigating, reporting, and remedying the effects of sexual harassment by students like S.W. and J.P.R. against students like Plaintiff; or, properly responding to and remediating continued harassment and hostility by students like those who continued to harass Plaintiff after she reported the sexual assaults.

231.

Defendants' systematic and purposeful creation of customs, policies, and procedures resulted in the deprivation of the liberty and bodily integrity of its students, including Plaintiff, and clearly violates the Fourteenth Amendment to the United States Constitution. Specifically, Defendants deliberately adopted inadequate customs, procedures, and practices in violation of Plaintiff's equal protection and substantive due process rights under color of State Law.

232.

Defendants' systematic and purposeful implementation of its customs, policies, and procedures resulted in the deprivation of the liberty and bodily integrity of its students, including Plaintiff, and clearly violates the Fourteenth Amendment to the United States Constitution. Specifically, Defendants deliberately adopted inadequate customs, procedures, and practices in violation of Plaintiff's equal protection and substantive due process rights under color of State Law.

233.

While TCSD maintains official policies regarding discrimination, student harassment, the reporting and prompt investigation of discrimination and sexual harassment complaints, and disciplinary action, Defendants' informal policies, patterns and/or practices of behavior constituted disparate treatment of victims of sexual assault and harassment and had a disparate impact on victims of sexual assault and harassment, to include Plaintiff.

234.

Defendants maintained a practice of being ambivalent to and/or ignoring reports of student-against-student sexual harassment and taking sides with those accused of sexual assault and

harassment, including Plaintiff's reports, and refused to acknowledge that student-against-student sexual harassment was a problem at its JHHS, despite public reports that an ongoing culture of student rape and harassment existed in its high school community.

235.

Consistent with its practices, Defendants failed to investigate and take reasonable remedial action to reports that S.W. and J.P.R., TCSD students, sexually assaulted Plaintiff, another TCSD student.

236.

Consistent with its practices, Defendants failed to investigate and take reasonable remedial action to reports that JHHS students were sexually harassing Plaintiff as a result of the aforementioned sexual assault and retaliating against her because she reported the assault and harassment to authorities and JHHS administration and staff.

237.

Defendants engaged in a policy, pattern and practice of behavior designed to discourage and dissuade female students who have been sexually assaulted from seeking prosecution and protection, and from pursuing completion of their degrees and involvement in on-campus activity after being sexually assaulted.

238.

Defendant TCSD is required to participate in the United States Department of Education Office of Civil Rights ("OCR") surveys.  In its most recent survey, which was the 2017-2018 school survey, TCSD certified that it received no allegations of student harassment or bullying on

the basis of sex at JHHS and that no students reported being harassed or bullied on the basis of sex to a teacher or school administrator of JHHS.

239.

Defendant TCSD's certifications in its 2017-2018 school survey were inaccurate with the reality of what was going on at JHHS with regard to student based sexual harassment and bullying.

240.

Defendant TCSD's inaccurate reports is but one example of TCSD failing to "acknowledge the darker side of Jackson's culture, that mak[ing] it difficult for young people to talk about [sexual assault]."

241.

The overall policy, patterns, practices, and actions of Defendants constituted disparate treatment of female students, female sexual assault victims, had a disparate impact on female students, and amounts to behavior that shocks the conscience.

242.

As a direct and proximate result of Defendants' deliberate indifference to Plaintiff's equal protection and substantive due process rights under the Fourteenth Amendment of the United States Constitution, Plaintiff sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

  a. Past, present, and future physical and psychological pain, suffering and impairment;

  b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

  c. A marred educational and disciplinary record, and impaired educational capacity and future earning capacity;

51

d.      Attorneys' fees and costs, pursuant to 42 U.S.C. § 1988; and

e.      Such other and further relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION

### FAILURE TO TRAIN, IN VIOLATION OF PLAINTIFF'S CONSTITUTIONAL AND FEDERAL RIGHTS, PURSUANT TO 42 U.S.C. § 1983

243.

All paragraphs of this Complaint are incorporated herein by reference.

244.

At all times relevant hereto, Defendants TCSD, CHAPMAN, CRISP, and ABRAHAM, were policy makers and administrators having duties to train, and failed to properly or sufficiently train its administrators, staff, students, and parents about: sex discrimination and sexual harassment against students; Title IX and/or student-against-student sexual misconduct; identifying, investigating, reporting, and remedying the effects of sexual harassment by students like S.W. and J.P.R. against students like Plaintiff; or, properly responding to and remediating continued harassment and hostility by students like those who continued to harass Plaintiff after she reported sexual assault.

245.

Defendants TCSD, CHAPMAN, CRISP, and ABRAHAM failed to train their administrators, staff, students and parents despite the plainly obvious need for training on, among other things, student-against-student sexual misconduct and identifying, investigating, reporting, stopping, and remediating the effects of sexual harassment.

246.

Defendants TCSD, CHAPMAN, CRISP, and ABRAHAM failed to train their

administrators, staff, students and parents despite the plainly obvious need for training on, among

other things, the prohibition, illegality, and impropriety of retaliating against students like

Plaintiff who report violations of Title IX and student-against-student sexual misconduct, which

is vital to enforcement of Title IX.

247.

Numerous authorities, including the U.S. Supreme Court and U.S. Department of

Education, made clear and gave notice to Defendants that school employees will confront student

sexual harassment and abuse with regularity, given the high predictability, recurrence and

prevalence of student-against-student sexual assault and abuse in schools. Thus, it was foreseen

and inevitable that Defendant TCSD's administrators and employees would encounter recurrent

situations involving sexual abuse that implicated students' Constitutional and federal rights,

and it did, in fact, encounter those recurring situations.

248.

Defendants TCSD, CHAPMAN, CRISP, and ABRAHAM, failed to adequately train their

administrators, staff, students, and parents, and thereby prohibit or discourage foreseen conduct

and retaliation, despite the clearly established and well-known known dangers of sexual

harassment, assault, battery, and violence faced by students in U.S. public schools, and thereby

was deliberately indifferent.

249.

Defendant's failure to train its administrators, staff, students, and parents effectively

denied Plaintiff clearly established federal rights and Constitutional rights.

250.

Defendants TCSD, CHAPMAN, CRISP, and ABRAHAM's failure to train administrators, staff, students, and parents was deliberate, reckless, and in callous indifference to Plaintiff's federally protected rights.

251.

As a direct and proximate result of the Defendants' actions, inactions, and deliberate indifference to and violation of Plaintiff's clearly established Constitutional and federal rights, Plaintiff suffered, and continues to suffer, injuries including, without limitation, emotional distress, psychological trauma, and mortification.

252.

TCSD accepts hundreds of thousands of dollars of Federal educational funding each year and in turn promises to comply with the corresponding Title IX obligations.  Yet, here, TCSD failed to meet its most basic obligations to appoint a Title IX coordinator, assign an investigator to investigate Plaintiff's complaints of sex assault and harassment, and perform its required Title IX investigation.

253.

Additionally, Defendant TCSD is required to participate in the United States Department of Education Office of Civil Rights ("OCR") surveys.  In its most recent survey, which was the 2017-2018 school survey, TCSD certified that it received no allegations of student harassment or bullying on the basis of sex at JHHS and that no students reported being harassed or bullied on the basis of sex to a teacher or school administrator of JHHS.

254.

Defendant TCSD's certifications in its 2017-2018 school survey were inaccurate with the reality of what was going on at JHHS with regard to student based sexual harassment and bullying.

255.

Defendant TCSD's inaccurate reports is but one example of TCSD failing to "acknowledge the darker side of Jackson's culture, that mak[ing] it difficult for young people to talk about [sexual assault]."

256.

Upon information and belief, TCSD Board recognized some of its failures under Title IX when it ultimately appointed a staff member to serve as its Title IX Coordinator position in the Fall of 2019.

257.

However, TCSD learned that Plaintiff was sexually assaulted in 2017 and 2018. By the time TCSD decided to take Title IX seriously and appointed a Title IX Coordinator in Fall of 2019, its duties to promptly perform a thorough investigation into Plaintiff's allegations of sexual assault and take prompt action to remedy its effects had long been breached. As a result, Plaintiff was denied equal access to educational opportunities at JHHS.

258.

To this end, the Defendants' failure to train caused and perpetuated a culture of sexual harassment at JHHS that discouraged and dissuaded students who have been sexually assaulted and harassed from seeking prosecution and protection, and from pursuing completion of their degrees and involvement in on-campus activity after being sexually assaulted, including Plaintiff. When victims, such as Plaintiff, finally found courage to speak up about their student assailants,

TCSD staff and administrators were ignorant about victims' rights, and caused victims to become targets of harassment, victim blaming and other retaliation, either at the hand of TCSD staff or by those emboldened by TCSD's actions and inaction, or both.

259.

As a direct and proximate result of the Defendants' failure to train, Plaintiff sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a.    Past, present, and future physical and psychological pain, suffering and impairment;

    b.    Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c.    A marred educational and disciplinary record, and impaired educational capacity and future earning capacity;

    d.    Attorneys' fees and costs, pursuant to 42 U.S.C. § 1988; and

    e.    Such other and further relief as this Court deems just and proper.

### PUNITIVE DAMAGES

260.

In addition to compensatory damages, Plaintiff makes a claim for punitive damages against Defendants CHAPMAN, CRISP, and ABRAHAM in an amount to be proven at trial for the willful and wanton acts and omissions of said Defendants, to include violation of Plaintiff's civil rights as alleged herein under 42 U.S.C. § 1983.

261.

The acts and omissions of Defendants in this case were so gross and culpable in nature that they constitute reckless indifference and wanton disregard for the law and for the safety of TCSD students, including Plaintiff.  Said Defendants committed the acts and omissions alleged herein and subjected Plaintiff to improper treatment that caused Plaintiff to suffer harm so severe that no child should be expected to endure it.

262.

Defendants' actions should be punished, and an example should be made so that these actions and omissions are not repeated.

263.

This instance of reckless and callous indifference to Plaintiff's safety and Constitutional rights should be punished through the imposition of punitive damages so as to make an example of conduct that will not be tolerated.

**ATTORNEY FEES**

264.

As a result of Defendants' actions as alleged herein, Plaintiff was required to retain the services of attorneys and is entitled to a reasonable amount for attorney's fees and expert fees pursuant to 42 U.S.C. § 1988 for those violations covered by the Civil Rights Act.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays the Court for judgment in favor of Plaintiff and against Defendants, awarding Plaintiff her compensatory damages in an amount to be established at trial, equitable relief amending Plaintiff's educational and disciplinary record, reasonable attorneys'

fees and costs, legal interest and such other relief as the Court may deem just and proper under the circumstance.

### JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

Plaintiff requests that this matter be tried to a jury in Jackson, Wyoming.

Respectfully,

RACHEL ROE, Plaintiff,

By: _____
Kaden B. Canfield, 7-6238
EDWARDS LAW OFFICE, P.C.
PO Box 5345
Etna, WY 83118
Ph: (307) 883-2222
Fax: (307) 883-0555
kaden@edwardslawofficepc.com

By: _____
Jack D. Edwards, 6-3877
EDWARDS LAW OFFICE, P.C.
PO Box 5345
Etna, WY 83118
Ph: (307) 883-2222
Fax: (307) 883-0555
jack@edwardslawofficepc.com